UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:  Case No. F08-00110-DMD<br><br>CATHOLIC BISHOP OF NORTHERN ALASKA,<br><br>            Debtor. | Chapter 11<br><br>**Filed On<br>1/8/10** |
| CATHOLIC BISHOP OF NORTHERN ALASKA,<br><br>            Plaintiff,<br><br>    v.<br><br>CONTINENTAL INSURANCE COMPANY, CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA, THE CATHOLIC RELIEF INSURANCE COMPANY OF AMERICA, ALASKA NATIONAL INSURANCE COMPANY, and TRAVELERS CASUALTY AND SURETY COMPANY, f/k/a AETNA CASUALTY AND SURETY COMPANY,<br><br>            Defendants. | Adv. No. F08-90019-DMD |

**MEMORANDUM ON THE ADEQUACY OF CBNA'S FOURTH AMENDED
RESPONSE TO TRAVELERS' INTERROGATORY NO. 6**

Defendant Traveler's Casualty and Surety Company filed a motion to compel discovery from plaintiff Catholic Bishop of Northern Alaska ("CBNA"), on August 24, 2009.[1] Motions for a protective order and for leave to file a sur-reply were also filed. The

---

[1] Docket No. 77.

issues initially raised were numerous. However, many were resolved after a telephonic mediation held before the Bankruptcy Court Clerk. The parties filed a joint status report on December 9, 2009, which indicated that just one discrete discovery issue remained, pertaining to CBNA's fourth amended response to Traveler's Interrogatory No. 6.[2] The joint status report also stated that Travelers' motion for protective order was being withdrawn without prejudice. The withdrawal of this motion also rendered Travelers' motion for leave to file sur-reply moot.

Interrogatory No. 6 and CBNA's Fourth Amended Response

According to Travelers, its Interrogatory No. 6 "seeks information regarding what CBNA knew about alleged sexual abuse by the Perpetrators and when CBNA knew it."[3] Interrogatory No. 6 reads as follows:

> With respect to each PERPETRATOR:
>
> (a)  state the date YOU first learned of any CLAIM that the PERPETRATOR had engaged in SEXUAL CONDUCT,
>
> (b)  describe each CLAIM that the PERPETRATOR engaged in SEXUAL CONDUCT, including without limitation a description of the CLAIM, the PERSON who

---

[2] Joint Status Report by Plaintiff CBNA and Defendant Travelers Re: the Remaining Discovery Dispute, filed Dec. 9, 2009 (Docket No. 132), at 1.

[3] Travelers' Statement of Position Regarding the Inadequacy of CBNA's Fourth Amended Response to Interrog. No. 6, filed Dec. 9, 2009 (Docket No. 133), at 2.

2

> made the CLAIM, the date on which the CLAIM was made, the date on which YOU learned of the CLAIM, and the means by which you learned of the CLAIM;
>
> (c) describe all actions taken by YOU in response to each CLAIM that the PERPETRATOR engaged in SEXUAL CONDUCT, including without limitation a description of the name, title and address of each PERSON who took those actions on YOUR behalf and the dates on which those actions were taken;
>
> (d) identify all DOCUMENTS RELATING TO each CLAIM that the PERPETRATOR engaged in SEXUAL CONDUCT; and
>
> (e) describe all COMMUNICATIONS RELATING TO any and all alleged SEXUAL CONDUCT by each PERPETRATOR, including without limitation the date of the COMMUNICATION, the name, title and address of each PERSON involved in each COMMUNICATION, and a description of the subject matter of the COMMUNICATION.[4]

Travelers says this information is relevant to the "knowledge based" defense it has asserted in this proceeding, because the insurance policies it issued covered bodily injuries caused by an "accident," but not those "expected or intended from the standpoint of the insured."[5] Travelers contends the abuse claims would be expected, rather than accidental, and thus

---

[4] Joint Status Report (Docket No. 132), Ex. A at 37-38.

[5] *Id.* at 1-2.

3

excluded from coverage, if CBNA had knowledge that a perpetrator might be engaging in abuse prior to the time that abuse claims against that perpetrator were first asserted.[6]

CBNA's response to this interrogatory included three components. First, CBNA referred to its responses to Traveler's revised Interrogatory No. 1, which asked:

> With respect to each CLAIMANT: a) state when YOU first learned of a CLAIM that a PERPETRATOR had engaged in SEXUAL CONDUCT with the CLAIMANT and b) state all facts of which YOU are aware regarding each CLAIMANT'S assertion that a PERPETRATOR engaged in SEXUAL CONDUCT with that CLAIMANT.[7]

This portion of CBNA's response was appropriate under the circumstances because the information found in CBNA's response to this interrogatory is also pertinent to Interrogatory No. 6.

CBNA further responded to Interrogatory No. 6 by identifying the following documents: 1) correspondence regarding an assertion of possible abuse in 1969, 2) an exchange of correspondence from July, 1986, between an individual, Father Poole and Michael Kaniecki (who was at that time Bishop of Fairbanks), regarding Father Poole's confessional practices, which the individual wrote "exhibited 'sexual deviation,'" and was "a form of sexual abuse," and 3) correspondence between Father Poole and various Jesuit

---

[6] *Id.*

[7] Joint Status Report (Docket No. 132), Ex. A at 3.

4

representatives in the 1960's concerning Poole's "confessional practices."[8] CBNA identified each of piece of correspondence by Bates number. Travelers already had copies of all of these documents.

CBNA then stated:

> CBNA has no further knowledge of a CLAIM that an alleged PERPETRATOR had engaged in SEXUAL CONDUCT, other than stated above.
>
> CBNA further notes that for the purpose of providing Responses to Interrogatory No. 6, neither CBNA nor its legal counsel have reviewed all of the documents that were previously disclosed by the parties to the Alaska Clergy Abuse Cases and which have been previously produced to Travelers and the other defendants in this action. CBNA's responses to Interrogatory No. 6 are based on information regarding a "CLAIM" that has come to CBNA's attention before the responses to Interrogatory No. 6 have been provided this same date. CBNA is not intending to represent and verify by its Responses to Interrogatory No. 6 that nowhere else among the thousands of pages of documents disclosed by the parties in the Alaska Clergy Abuse Cases and produced to Travelers and the other defendants are there any other references to a "CLAIM" as that term is used in Interrogatory No. 6. CBNA's responses to Interrogatory No. 6 only refer to "CLAIMS" which have come to the attention of the current representatives of CBNA, and CBNA's counsel during the course of the Alaska Clergy Abuse Cases and thereafter.

---

[8] Joint Status Report (Docket No. 132), Ex. A at 38-39.

5

>       CBNA further states that Travelers' definition of "CLAIM" is overbroad.  By its definition of "CLAIM," Travelers' Interrogatory No. 6 requests information that is not reasonably calculated to lead to the discovery of admissible evidence with regard to the issues relevant to this Declaratory Judgment Action.  Without limiting its Objections to the definition of "CLAIM" as used in Interrogatory No. 6 and elsewhere in Travelers' Interrogatories, CBNA notes for example that **** is neither a Pre-Bankruptcy Claimant nor a Post-Bankruptcy Claimant against CBNA.  Furthermore, Fr. Poole's Confessional Practices does [sic] not involve "SEXUAL CONDUCT" as defined by Travelers.  The fact that Ms. **** letter includes references to "sexual deviation" and "sexual abuse" does not mean that in fact Ms. **** criticism of Fr. Poole's Confessional Practices in the 1960's is a relevant CLAIM of SEXUAL CONDUCT by an alleged PERPETRATOR for the purposes of the pending Declaratory Judgement Action.
>
>       Of the alleged Perpetrators who were alive after October 2002, two priests (McCaffrey and Ornowski) were placed on administrative leave.  As for the living, retired accused priests (i.e. Poole and Jacobson), CBNA has communicated with and coordinated with those priests' religious order (the Society of Jesus, Oregon Province) and CBNA understands that they are no longer in ministry.[9]

The fourth amended responses to Travelers' interrogatories were verified by CBNA's human resources director, Ronnie Rosenberg.  Rosenberg avers that the information provided to Travelers in response to the interrogatories is "based upon records and

---

[9] *Id.*, Ex. A at 39-40.

information currently available to CBNA and also the knowledge of management level representatives of CBNA and other CBNA representatives expected to have any such knowledge."[10] Rosenberg also avers that the information provided is "true and accurate to the best of CBNA's current knowledge, except for any response which is stated on information and belief."[11]

The Dispute Regarding CBNA's Response

Travelers contends CBNA has refused to fully respond to Interrogatory No. 6. It says CBNA's answer is incomplete because it didn't review "thousands of pages of unspecified, relevant documents in CBNA's possession,"[12] instead limiting its response "to information that has 'come to the attention' of a selected subset of its current agents."[13] Travelers says there is no basis for refusing discovery; the information sought by Interrogatory No. 6 is relevant to its affirmative defense and CBNA has not argued that it is burdensome.

At the hearing on this matter, Travelers reiterated that CBNA had refused to review "tens of thousands of documents." Because of this, and also because CBNA hadn't sought information from its former employees to see what they knew about perpetrator

---

[10] Joint Status Report (Docket No. 132), Ex. A at 69.

[11] *Id.*

[12] Travelers' Statement of Position (Docket No. 133), at 2.

[13] *Id.* at 5.

7

claims, Travelers argued that CBNA had failed to provide its full institutional knowledge when preparing its response. Additionally, Travelers argued that CBNA should be required to identify the thousands of documents it hadn't reviewed.

CBNA contends its response to Interrogatory No. 6 is adequate. It says it has provided all information in the current knowledge of its management level representatives "and also any other persons expected to have such knowledge."[14] At oral argument, CBNA pointed out that several of the former employees who might have knowledge of the type requested by Travelers are now deceased. Some of the events of alleged abuse go back to the 1950's and there is no one left to give information.

As for Travelers' contention that CBNA had refused to review relevant, unspecified documents, CBNA noted that it has provided Travelers with detailed indices of such records, which consist of documents produced in the Alaska Clergy Abuse Cases, information from CBNA's historical records, and copies of transcripts from all depositions taken in the Alaska Clergy Abuse Cases.[15] Travelers already had copies of all these documents. CBNA noted further that many of these documents were produced by other parties involved in the Alaska Clergy Abuse Cases.[16] Both CBNA and Travelers would have

---

[14] Joint Status Report (Docket No. 132), Ex. C at 5.

[15] *Id.* at 3.

[16] The Society of Jesus, Oregon Province, and the Society of Jesus, Alaska, were co-defendants in all of the Alaska Abuse cases. *See* Decl. of Bishop Donald J. Kettler in Supp. of Ch. 11 Petition and First Day Mots., filed in *In re Catholic Bishop of Northern Alaska*, Main Case No. F08-00110-DMD, on Mar. 2, 2008 (Docket No. 31), at 10.

8

to conduct an identical review of these documents to see if they might contain any additional information responsive to Interrogatory No. 6. CBNA suggested that the expense of reviewing these documents should be borne by Travelers.[17] Further, CBNA argued that it should not be compelled to "acquire knowledge" by reviewing these discovery documents in order to see if they contain further evidence responsive to Traveler's Interrogatory No. 6.

Analysis

The trial court "has wide discretion in controlling discovery."[18] Further, the court must limit discovery, on motion of a party or *sua sponte*, if it finds that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> . . . .
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.[19]

---

[17] Joint Status Report (Docket No. 132), Ex. C at 1.

[18] *Blackburn v. United States*, 100 F.3d 1426, 1436 (9th Cir. 1996), *citing Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

[19] Fed. R. Civ. P. 26(b)(2)(C), made applicable to adversary proceedings under Fed. R. Bankr. P. 7026.

9

The crux of the dispute here is over who should review the "thousands of pages of documents" which have already been produced through discovery in the Alaska Clergy Abuse Cases. Travelers says "CBNA brazenly disclaims its obligation to provide a complete answer" because it has failed to review "thousands of pages of unspecified, relevant documents in CBNA's possession."[20] I find this argument a bit disingenuous; the thousands of pages of documents are in the possession of *both* CBNA and Travelers. Further, these documents are not just CBNA's. Many were produced by other parties involved in the Alaska Clergy Abuse Cases.

CBNA has responded to Interrogatory No. 6 based upon the records and information currently available to it, and from the knowledge of CBNA representatives who would be expected to have information responsive to the interrogatories. In my view, CBNA's caveat that it did not review the volumes of discovery that were produced in the Alaska Clergy Abuse Cases is not an attempt to limit or compartmentalize its knowledge. CBNA has not refused to review its own business records. Nor can it be said that CBNA has failed to specify the records it didn't review. The records are the product of discovery conducted in the Alaska Clergy Abuse Cases.[21] Travelers has copies of the documents and

---

[20] Travelers' Position Statement, filed Dec. 9, 2009 (Docket No. 133), at 1.

[21] Joint Status Report (Docket No. 132), Ex. A at 39-40.

deposition transcripts, plus detailed indices of these documents.[22] They are not unspecified records.

The events which gave rise to the abuse claims occurred decades ago. The age of these claims has worked to the detriment of all parties involved. Several of the priests accused of abuse had passed away before CBNA received notice of the first abuse claims in late 2002.[23] Bishop Kettler had assumed his position just months before, in August of 2002.[24] The Fairbanks Diocese itself was formed in 1962,[25] and some of the pertinent events occurred as early as the 1950's. Documentary evidence has been lost and witnesses are no longer available to interpret historical records, as was apparent in a related adversary proceeding, *Continental Ins. Co. v. CBNA (In re CBNA)*, Adv. No. F08-90033-DMD.[26]

Finally, it should be recognized that this is a declaratory judgment action to determine the scope of CBNA's liability insurance coverage. The court's findings regarding the provisions in the insurance policies at issue here, including a finding as to whether any prior knowledge of abuse by CBNA would impact its insurance coverage under those

---

[22] *Id.*, Ex. C at 3.

[23] *Id.*, Ex. A at 40.

[24] *See* Decl. of Bishop Donald J. Kettler in Supp. of Ch. 11 Petition and First Day Mots., filed in *In re Catholic Bishop of Northern Alaska*, Main Case No. F08-00110-DMD, on Mar. 2, 2008 (Docket No. 31), at 2.

[25] *Id.* at 3.

[26] In that proceeding, CBNA was unable to establish the existence of liability insurance policies it claimed had been issued by Continental Insurance Company for periods in the 1970's.

11

policies, will be based upon the terms of the insurance documents themselves. None of the abuse claims will be liquidated in this proceeding. The information Travelers seeks in Interrogatory No. 6 may be significant to the liquidation of the abuse claims which have been asserted against CBNA, but it is not essential to resolution of the issues at stake in this declaratory judgment action. Considering the time and expense that would be involved in reviewing the thousands of pages of discovery from the Alaska Clergy Abuse Cases, and the comparative resources of the parties, I feel it is appropriate for Travelers, rather than CBNA, to conduct this review. Traveler's motion to compel, with respect to Interrogatory No. 6, will be denied. An order will be entered accordingly.

    DATED: January 8, 2010

                                      BY THE COURT

                                      /s/ Donald MacDonald IV
                                      DONALD MacDONALD IV
                                      United States Bankruptcy Judge

Serve:  D. Paige, Esq.
        K. Nye, Esq.
        R. Groseclose, Esq.
        S. Boswell, Esq.
        J. Altieri, Esq.
        C. Young, Esq.
        F. Marczyk, Esq.
        J. Altieri, Esq.
        M. Pompeo, Esq.
        W. Corbett, Esq.
        Case Participants per Notice of Electronic Filing
        Cheryl Rapp, Adv. Case Mgr.

        01/08/2010